## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO: 4:04CV-095-M**

**MACHINERY AND CONVEYORS, INC.**                                              **PLAINTIFF**

**V.**

**HUNT MIDWEST MINING, INC.**                                                       **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff, Machinery and Conveyors, Inc., for summary judgment [DN 19]. Also before the Court is a cross-motion for summary judgment filed by Defendant, Hunt Midwest Mining, Inc. [DN 23]. Fully briefed, these matters stand ripe for decision. For the following reasons, the motion by the Plaintiff for summary judgment is **DENIED**, and the cross-motion by the Defendant for summary judgment is **DENIED**.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific

facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

The dispute concerns issues arising out of the negotiation and performance of contractual obligations between Defendant, Hunt Midwest Mining, Inc. (Hunt Midwest), and Plaintiff, Machinery and Conveyors, Inc. (Machinery). Hunt Midwest is a Missouri corporation with its principal place of business located in Kansas City, Missouri. It is in the business of maintaining and operating underground mines and quarries in both Missouri and Kansas. Machinery is a Nevada corporation with its principal place of business located in Madisonville, Kentucky. Machinery's business provides services, technical expertise, mining equipment, mining machinery, and mining parts to mining companies and operators, such as Hunt Midwest.

In about September of 2003, Hunt Midwest met with representatives of Machinery to discuss both its plans for an underground mining operations and Machinery's ability to aid in the operation. Bob Schmidt, the Vice President of Mining for Hunt Midwest at the time, testified that Hunt Midwest selected Machinery at the conclusion of the meeting to provide equipment and services including an escape hoist and a conveyor system. The parties then entered negotiations, and by no later than December of 2003, Hunt Midwest agreed to hire the Plaintiff to (1) dismantle, transport, and install an escape hoist and (2) manufacture a conveyor system according to the written specifications provided by Hunt Midwest.

The Defendant formally ordered the escape hoist via Purchase Order 2098 on December 23, 2003. The purchase order called for three installment payments, due and payable at three intervals: $21,000 at start-up, $13,000 at transport, and $46,000 due upon the hoist's final assembly and installation for the total contract price of $80,000. The Defendant formally ordered the conveyor system via Purchase Order 2101 on January 2, 2004. This order also called for three installment payments due and payable at three intervals: $117,600 at start-up, $102,900 upon shipping, and $73,500 upon inspection for a total contract price of $294,000.

With respect to the conveyor system, the Defendant paid the first two installments of the contract but refused to pay the remaining $73,500 due upon inspection because it believed that the conveyor system was deficient in numerous aspects. Hunt Midwest had provided Machinery with a list of specifications for the conveyor system, and, in its view, Machinery had fallen short of those specifications in numerous aspects. Not only did the

equipment allegedly not meet the written specifications, Hunt Midwest also claims that the workmanship was extremely poor. Specifically, Defendant's expert, Terry Faddis, cited several defects with the craftsmanship of the conveyor system. Based on this assessment, Tony McLaughlin, Director of Special Projects for Hunt Midwest, concluded that Machinery was not capable of supplying equipment that complied with Hunt Midwest's specifications. Ron Anderson, Director of Support Services for Hunt Midwest, also testified that Machinery never offered to fix the major defects that Hunt Midwest identified in the conveyor system.

For its part, Machinery contends that an agent of Hunt Midwest, Equipment Superintendent Bill Murphy, approved the component parts of the conveyor system before they were shipped to the Defendant. Machinery's expert, John Fillion, also disputes Hunt Midwest's characterization of the conveyor system, arguing that any defects were minor.

As to the escape hoist, the Defendant again paid the first two installments but failed to pay the final installment of $46,000 due upon final assembly and installation, which occurred on March 4, 2004. By that date, Hunt Midwest had already notified Machinery of its problems with the conveyor system, and it did not make the final payment of $46,000 for the escape hoist under the theory that only one contract existed between the parties. In April or May of 2004, Defendant discovered that Plaintiff's installation of the escape hoist was also defective when the hoist began to lean, rendering it unusable and unsafe. Defendant claims that the concrete foundation installed by Plaintiff was defective. To repair the problem, Defendant incurred costs of $3,255. The Plaintiff claims, however, that the Defendant actually used the escape hoist on occasion for ingress and egress into its mine.

Both parties have filed claims in this action. In its Complaint, Plaintiff brings two Counts against the Defendant, one for each of the contracts that it asserts it entered into with the Defendants. Count I pertains to the contract for the escape hoist. In Count I, Plaintiff avers that the Defendant is liable to the Plaintiff under a breach of contract theory, or, in the alternative, under the equitable principles of estoppel, unjust enrichment, detrimental reliance, and partial performance, for damages in the amount of $42,704.50. Count II pertains to the contract for the conveyor system. In Count II, Plaintiff avers that the Defendant is liable to the Plaintiff under a breach of contract theory, or, in the alternative, under the equitable principles of estoppel, unjust enrichment, detrimental reliance, and partial performance, for damages in the amount of $73,500.

In response to Machinery's claims, Hunt Midwest filed a Counterclaim in which it alleged that only two component parts of the conveyor system were in compliance with the terms of the parties' agreement and, therefore, accepted by the Defendant. Thus, the Defendant claims it is entitled to a refund of the $24,500 paid on the head, tail, and take-up sections. The Defendant also asserts that it is entitled to certain credits amounting to $3,255 relating to costs it was forced to incur to ensure the equipment it elected to accept from Plaintiff was in working condition.

### III. DISCUSSION

Both parties argue that they are entitled to summary judgment. The Plaintiff asserts that it perfectly tendered both the conveyor system and the escape hoist. The Defendant disputes this. A threshold issue is whether the parties consummated one or two contracts.

Plaintiff argues that the two distinct purchase orders, written on different days and noting distinct payments schedules for each item, support the conclusion that two contracts are at issue. Plaintiff also argues that as of November of 2003, it had already begun working on the conveyor system but had not yet been solicited to work on the escape hoist. The Defendant contends that the parties agreed in September of 2003 that the Plaintiff would work on both items. The Defendant further contends that the two purchase orders simply capture in writing the one oral agreement of the parties. The Defendant claims this oral agreement was reached before it sent the purchase orders.

"[W]here a contract is contained in two separate and distinct papers, they will be read together for the purpose of ascertaining the true contract." See Luten Bridge Co. v. Grant County et al., 267 S.W. 1082, 1083 (Ky. 1925). An oral contract is ordinarily no less binding than one reduced to writing. Frear v. P.T.A. Indus, 103 S.W.3d 99, 105 (Ky. 2003). There is a question of fact appropriate for jury resolution when a genuine issue of material fact exists as to whether the parties reached an oral agreement. Id.

In this case, there is a factual dispute as to whether the parties formed one oral contract encompassing the entirety of the work or whether two separate contracts were formed. Furthermore, with regard to the work itself, Plaintiff argues that as it made a perfect tender, it is entitled to the remaining balance due under the contracts. Defendant contends that the equipment and services provided by Plaintiff did not conform to the terms of the parties' contract nor was the Plaintiff's work within acceptable workmanlike standards. Both have evidence to support their positions. Thus, factual issues exist precluding summary

judgment in this matter.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [DN 19] is **DENIED**, and Defendant's cross-motion for summary judgment [DN 23] is **DENIED**.

cc: counsel of record
04cv-095Machinery